DIZE AWNING AND TENT COMPANY v. CITY OF WINSTON-SALEM

No. 7521SC987

(Filed 5 May 1976)

1. **Appeal and Error § 68— prior Supreme Court opinion — amendment of complaint — law of the case**

    In this action to recover for flood damage allegedly caused by defendant city's negligence, a prior Supreme Court opinion did not constitute the law of the case as to the sufficiency of plaintiff's evidence to go to the jury where plaintiff changed its position as to defendant's acts of negligence in an amendment to its complaint after the Supreme Court opinion was filed and presented evidence at the second trial in conformity with its amendment.

2. **Waters and Watercourses § 1— servience of lower lands**

    Each of the lower parcels of land along natural drainways is servient to those on the higher level in that each is required to receive and allow the unimpeded passage of surface water from the higher level.

**3. Waters and Watercourses § 1— diversion of water — acceleration of water**

While a property owner may not divert water or cause it to flow onto the land of another in a manner different from its natural course so as to injure the other owner's land, he may accelerate and increase the flow of such water from his lands provided the course remains unchanged.

**4. Municipal Corporations § 20; Waters and Watercourses § 1— change of culvert size — flooding — absence of negligence**

In this action against a city to recover for flood damage to plaintiff's property, plaintiff's evidence was insufficient for the jury where it tended to show only that defendant city replaced a culvert with a larger culvert, and that large debris which could not have passed through the smaller culvert did pass through the replacement culvert and blocked plaintiff's smaller culverts, causing water to pond and flood plaintiff's property, since defendant only increased or accelerated the flow of water under its street.

APPEAL by plaintiff from *Long, Judge.* Judgment entered 27 August 1975 in Superior Court, FORSYTH County. Heard in the Court of Appeals 17 March 1976.

In this action, instituted on 14 August 1964, plaintiff seeks to recover $75,000 as compensation for flood damage allegedly caused by the negligence of defendant.

The case first came on for trial at the 17 April 1967 session of the court. After considering the pleadings and stipulations entered into between the parties, the trial judge concluded that, as a matter of law, plaintiff was not entitled to recover and entered judgment dismissing the action. Plaintiff appealed and in an opinion, filed 8 November 1967, reported in 271 N.C. 715, 157 S.E. 2d 577, the Supreme Court reversed the judgment of the trial court, holding that if plaintiff was able to substantiate its allegations, it was entitled to have a jury pass upon its claim.

The allegations of the pleadings at the time of the former appeal are summarized in the Supreme Court opinion cited above and no useful purpose would be served in summarizing them here.

On 5 July 1968 and 1 November 1968, plaintiff filed amendments to its complaint. The substance of the amendments are hereinafter set forth in this opinion.

When the cause came on for trial at the 25 August 1975 session of the court, plaintiff presented evidence which is summarized in pertinent part as follows:

In about 1925 plaintiff purchased a vacant lot approximately 150 feet northwest of South Main Street in Winston-Salem. A small creek or branch ran through plaintiff's property and on through a culvert under South Main Street, plaintiff's property being downstream from the street. At that time defendant maintained a 30-inch culvert or pipe under the street, this being the same culvert that was under the street when defendant annexed the area in 1919.

In 1925 plaintiff laid a 24-inch pipe in the branch running through its property and built over it, the open branch continuing north and south of plaintiff's building. Around 1930 plaintiff extended its building to the west and installed a 36-inch pipe under the new section. In 1946 plaintiff installed two pipes, 24 inches and 30 inches in size, and extended its building to the south. In about 1951 plaintiff purchased the 150 feet of property between its original lot and the Main Street culvert; a manhole was built at the west end of the culvert and a 36-inch pipe was installed between the manhole and the two pipes beginning at the south side of plaintiff's building. In 1954 plaintiff sold this property and the purchaser built an A & P food store and parking lot on it.

In 1960 defendant replaced the old 30-inch pipe or culvert under Main Street with a new 42-inch culvert. Until 1960 plaintiff had never had any flooding problems but in April of 1961 its property was flooded and on 28 May 1963 there was another flooding incident that was considerably worse. The flooding caused water to run into plaintiff's building, inflicting extensive damage to its machinery, merchandise and other property.

After the 1963 flooding, employees of plaintiff and defendant examined the junction box where plaintiff's 30 and 24-inch pipes connected with the 36-inch pipe at the A & P store property line. They found that the passage of water into plaintiff's pipes had been blocked by automobile tires, logs, a tree stump, and other large items of debris. Prior to 1960 these items of debris could not have passed through the Main Street culvert.

Defendant's employees regularly inspect the Main Street culvert and also the pipes continuing downstream from the

culvert. They crawl through the pipes from time to time and clean out debris. They crawled through the pipe under the A & P property on 24 May 1963, four days before the flooding of plaintiff's property. While defendant does not make repairs and maintenance on drainage pipes located on private property, it cleans them out.

At the conclusion of plaintiff's evidence, defendant's motion for directed verdict pursuant to Rule 50(a) was allowed and from judgment dismissing the action, plaintiff appeals.

*Deal, Hutchins and Minor, by William Kearns Davis, for plaintiff appellant.*

*Womble, Carlyle, Sandridge and Rice, by William F. Womble and Roddy M. Ligon, Jr., for defendant appellee.*

BRITT, Judge.

Did the trial court err in allowing defendant's motion for directed verdict and dismissing the action? We hold that it did not.

[1]  First, we respond to plaintiff's argument that the Supreme Court opinion established the law of this case, that plaintiff presented evidence substantially as alleged in its pleadings, therefore, it was entitled to have the jury pass upon its cause. We reject this argument.

The Supreme Court opinion, page 720, contains the following paragraph:

> "And now, turning to the plaintiff's position, construed most favorably to it, the plaintiff alleges that by the City's action in removing a 36-inch pipe or culvert, *which was guarded by the use of covers, grilles, and other protective devices,* and replacing it with a larger one, *without grilles or other devices to prevent tires and other large debris from entering it,* it created a condition that would flood plaintiff's property when they could not be accommodated by plaintiff's smaller culverts. In blocking the plaintiff's culverts they would naturally cause water to pond and flood plaintiff's property, which plaintiff alleged resulted in $75,000 damage." (Emphasis added.)

We think the decision in the former appeal turned on plaintiff's allegations at that time that before the culvert was re-

placed it was guarded at the east end by grilles and other protective devices, but after the culvert was replaced, defendant failed to reinstall grilles or other protective devices. In its amendment to the complaint, filed on 1 November 1968, subsequent to the Supreme Court decision, plaintiff, among other things, alleged the following: "The plaintiff, in paragraph 9 above, does not intend to allege that any covers or grilles were located at the eastern end of the old culvert under South Main Street. . . . "

In view of the quoted amendment, and plaintiff's evidence in conformity therewith, we think our present position in applying the law to the instant case is different from the position confronting the Supreme Court on the former appeal.

[2]  The law appears well settled in this jurisdiction: each of the lower parcels of land along natural drainways is servient to those on the higher level in that each is required to receive and allow the unimpeded passage of surface water from the higher level. *Midgett v. Hwy. Comm'n,* 260 N.C. 241, 132 S.E. 2d 599 (1963); J. Webster, Real Estate Law in North Carolina § 320 (1971). This is the civil law rule long prevailing in this State. *Davis v. Cahoon,* 5 N.C. App. 46, 168 S.E. 2d 70 (1969); *cert. denied,* 279 N.C. 348, 182 S.E. 2d 580 (1971). *See, cf.,* 1A G. Thompson, Commentaries on Modern Law of Real Rroperty, § 266 (1964) (common law rule). Less emphasis is placed on the existence of well defined surface channels than on a treatment of surface water as a resource. It is designed to maximize the beneficial usage of such waters. As stated by our Supreme Court in an early decision:

> " . . . The surface of the earth is naturally uneven, with inequality of elevation. The upper and lower holdings are taken with a knowledge of these natural conditions, and the privilege or easement of the upper tenant to carry off the surface water in its natural course, under reasonable limitations, and the subserviency of the lower tenants to this easement are the natural incidents to the ownership of the soil. The lower surface is doomed by nature to bear this servitude to the superior and must receive the water that falls on and flows from the latter." *Mizell v. McGowan,* 120 N.C. 134, 137, 26 S.E. 783, 784 (1896).

[3]  A second rule is that one property owner may not divert water or cause it to flow onto the land of another in a manner

different from the natural course in which it would normally flow, so as to injure the other owner's land. Should a lower landowner divert, dam or impound the natural flow of surface waters so as to cast them back upon and damage the upper landowner, then he may be subject to liability in an action for damages. *Braswell v. Hwy. Comm's*, 250 N.C. 508, 108 S.E. 2d 912 (1959).

This is subject to corollary, that while the land owner may not *divert* surface waters from their natural course, he may *accelerate* and increase the flow of such water from his lands, provided the course remains unchanged. Thus surface waters may be drained into a natural drainway without liability to lower property owners for damage caused to lands along the lower drainway as a result of increased flow of a natural stream. *Barcliff v. R. R.*, 168 N.C. 268, 84 S.E. 290 (1915).

[4] We feel that these principles, applied to plaintiff's evidence thoroughly substantiate the trial judge's decision to grant defendant's motion for directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974). *See generally*, W. Shuford, North Carolina Practice and Procedure § 50-10 (1975). At no point during plaintiff's sixty odd years of occupation and ownership did the city ever maintain more than a mere culvert. This was a valid exercise of the municipal police power, authorized under present G.S. 160A-297 and G.S. 160A-311 et seq. *See e.g.*, former G.S. 160-222 (1964), repealed N. C. Session Laws, c. 698, s. 2 (1971). During this same period plaintiff sought to encase or reroute the course and flow of South Creek. Defendant acted only to increase or accelerate the volume and flow of water under its street, obviously in order to alleviate flooding endangering property owners east of South Main Street. At no point did defendant ever divert the course of South Creek to the detriment of lower property owners including plaintiff.

That defendant selected a design choice for construction of a replacement culvert, which exposed the inadequacy of plaintiff's private drain system for coping with increased flow from the South Creek watershed is no basis upon which to impose liability on defendant. Given a number of alternatives from which to choose, and without more than plaintiff's evidence of negligence, the judiciary will not question or second guess the wisdom of local municipal officials in selecting or not selecting a particular design rather than one of those posited by plaintiff's expert at trial. *State v. Stowe*, 190 N.C. 79, 128

S.E. 481 (1925) ; *Clark's v. West,* 268 N.C. 527, 151 S.E. 2d 5 (1966) ; *State v. Camp,* 286 N.C. 148, 209 S.E. 2d 754 (1974). *See generally,* 6 E. McQuillin, Municipal Corporations §§ 24.02, 24.30 (3d rev. ed. 1969). Plaintiff has failed to come forward with any evidence from which to infer either abuse of discretion or an invalid exercise of municipal police power. So long as defendant's conduct remained within bounds of its right to accelerate or increase rate of flow under the easement of servitude, there is no basis for negligence liability.

For the reasons stated, the judgment appealed from is

Affirmed.

Judges PARKER and CLARK concur.